UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA ,

       Plaintiff,

 v.

Case No. 09-cr-254-pp

LAMAR WALTON,

       Defendant.

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 991)**

The defendant, who was released from prison on July 14, 2017, has filed a motion seeking early termination of his five-year term of supervised release. Dkt. No. 991. He reports that he had no infractions while incarcerated for eight and a half years and that he completed a "short length" drug program and the Thinking for a Change program, as well as other programs he can't remember right now. Id. at 1. He reports that that he reconnected with his family; he has three grandchildren. Id. He explains that he isn't working right now because he is disabled, having had an eye transplant while in custody; he receives SSDI. Id.

Despite his disability, the defendant says that he mentors students at Washington High School, sharing his story with them and encouraging them to stay on the right track. Id. at 2. He also helps with the Running Rebels

1

program and the AAU athletic basketball teams on a volunteer basis, and that he's allowed to travel with the teams. Id.

The defendant has been talking with his family about moving to another state, but he wants to do so "only with a clean slate." Id. He says that if the court terminates his supervised release, he can travel with the organizations he's mentioned. He also explains that he's had no police contact since his release, that he has stayed drug- and alcohol-free and that he has complied with the conditions of supervision. Id.

The defendant attached a letter from a teacher/coach at Washington High School, attesting to the defendant's work as a team mentor, and a letter from the program director of Running Rebels, praising his work as a coach and mentor with that program. Dkt. No. 991-1.

Probation reports that the defendant is scheduled to discharge from supervision on July 13, 2022. Dkt. No. 1000 at 1. He has completed a little over half of his supervised release term.

Under 18 U.S.C. §3583(e)(1), a district court may terminate a defendant's supervised release after the defendant has served at least one year if, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," the court finds that early termination of justice." 18 U.S.C. §3583(e)(1). Judge Lynn Adelman considered this provision in United States v. O'Hara, noting that it contains three requirements:

> (1) the defendant has served at least one year of supervision;
> (2) the government is given notice and an opportunity to be heard; and

> (3) termination is in the interest of justice based on the pertinent § 3553(a) factors and the defendant's conduct.

United States v. O'Hara, No. 00-Cr-170, 2011 WL 4356322, at *3 (E.D. Wis. Sept. 16, 2011) (citing United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998) and United States v. Lowe, 632 F.3d 996, 998-99 (7th Cir. 2011)). While noting that district courts possess "wide discretion in making [the] determination [whether to terminate supervised release early]," Judge Adelman cautioned that courts have held "the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination." O'Hara, 2011 WL 4356322, at *3 (collecting cases). The defendant carries the burden of proving that he has done more than just follow the rules. Id. (citing United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006)). The district court need not make explicit findings on each of the §5353(a) factors, but must give some indication that it considered those factors. See Lowe, 632 F.3d at 998 (citing United States v. Carter, 408 F.3d 852, 854 (7th Circ. 2005); United States v. Hale, 107 F.3d 526, 530 (7th Cir. 1997); United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003)).

The defendant has been on supervised release for longer than one year, and the court gave the government notice and opportunity to respond to the motion (which it has done, at Dkt. No. 999). The court must consider whether early termination is in the interest of justice, based on the §3553 factors and the defendant's conduct.

The first §3553(a) factor is the seriousness of the offense, and there is no question that the defendant's offense was serious. On September 27, 2010, the defendant pled guilty to conspiracy to possess with intent to distribute and to distribute at least five kilograms of cocaine, at least fifty grams of crack cocaine, and marijuana, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A) and 846. Dkt. No. 216. Attachment A to the plea agreement explained the defendant's role as the leader of the Six Trey gang following Rufus Cassel's death in 1996. Dkt. No. 203 at 18. The defendant, who carried firearms, exerted considerable influence over the Six Trey and Westlawn gangs. Id. He obtained sources of supply of cocaine for distribution through both gangs, directed criminal activity (including violence) to further the goals of the gangs, and kept the peace between the gangs by making sure they were working toward the same goals. Id. The government charged, and the defendant pled guilty to, a conspiracy that spanned some twelve years. Id.

Judge Charles N. Clevert, Jr. increased the defendant's guidelines calculation by 4 levels for the defendant's leadership role in the Six Trey Gang. Dkt. No. 539. But while the resulting guideline range was between 262 and 327 months, Judge Clevert sentenced the defendant to 156 months (almost nine years below the low end of the guideline range) with a five-year term of supervised release, consistent with the government's recommendation. Id. On January 26, 2016, this court reduced the defendant's sentence to 126 months, followed by a five-year term of supervised release. Dkt. No. 866. The sentences, even the reduced one, are evidence of the seriousness of the offenses.

The second §3553(a) factor is the defendant's personal history and characteristics. The defendant had a lengthy criminal history dating back to age twelve or thirteen, dkt. no. 894 at 8, and a past history of infractions while on community supervision. During the sentencing hearing, the parties discussed the defendant's history of criminal activity involving weapons, violence and drugs. Id. at 17-19. The instant offense occurred while the defendant was on supervision with the Wisconsin Department of Corrections. Dkt. No. 1000 at 3.

But the defendant's personal history isn't just his criminal history. He has had a difficult health history, with his blindness and the need for an eye transplant while in custody. He completed positive, pro-social programming while in custody. Since his release, probation reports that he has complied with all the conditions of his supervision except for the requirement that he file monthly reports (he's missed some of those). He has chosen to spend his time reestablishing relationships with family, mentoring youth in Washington High School and assisting with the Running Rebels basketball program, and he has impressed the people with whom he has worked. The court applauds the defendant's efforts to establish roots in the community, mentor young people and contribute to local organizations in positive ways.

Three other §3553(a) factors are relevant: the need to deter others from engaging in the kind of conduct the defendant engaged in, the need to protect the public and the need for rehabilitation. Deterring others weighs against termination just yet. The defendant committed very serious crimes that

5

damaged Milwaukee neighborhoods in multiple ways. The imprisonment sentence he received, while unquestionably severe, was not nearly as severe as it could have been, and it was reduced. Supervised release serves many purposes—it helps people transition back into the community, assists with treatment and job placement needs and gives a defendant the opportunity to show that he is willing to live his life differently after custody than he did before. But it is also part of a defendant's overall punishment. Because the defendant has served only about half of the five-year supervision term, he has served only about half of the out-of-custody "punishment" Judge Clevert intended.

The court also agrees with the government that the defendant has not provided the court with a sufficient reason to terminate his release early. The defendant has indicated that he and his family would like to move to another state; the government has stated that neither the government nor the defendant's probation officer would object to a request to transfer supervision to another district, but that the defendant has never raised this possibility with his probation officer. Dkt No. 999 at 3. The defendant says that he'd like to be able to travel with the groups/teams he mentors and coaches, but probation indicates that he's already been doing just that, by getting permission from his supervising agent to travel. It does not appear that supervision is preventing the defendant from doing any of the positive things he's been doing, or preventing him from making a new life somewhere else.

The defendant wrote to the court, expressing frustration that his probation officer had told him that courts in this district don't generally consider early termination until a defendant has served at least half his time; the defendant says this is why he filed his request when he did. Dkt. No. 1018. The defendant also says that his probation officer agreed to support his request for early termination, then did the opposite when he filed a written opposition to early termination. Id. The court does not know anything about a particular policy in this district as to when to consider or grant early termination of supervised release; as far as the court is aware, each judge makes that determination on a case-by-case basis, depending on the particular circumstances. There might be a case out there somewhere that warrants termination after only a year, or termination before a defendant has served half of the supervised release. The court can't recall having a case like that, but maybe other judges have. But as to when the "time is right," that is up to the judge, based on the particular circumstances. Nor does the court know what conversations the defendant and his probation officer had. The court notes, however, that it is not denying the defendant's request because the probation officer said to do so, or because the government said to do so. The court seeks input from the government and probation on every motion for early termination, but the court makes its own decision, based on the specific situation.

The defendant has done really well since his release. He should be proud of the strides he has made—staying clean, rebuilding his family relationships,

working hard to help young people avoid the mistakes he made. If the defendant continues this way, the court would gladly entertain another motion for early termination in a year or so. That is particularly true if, by that time, the defendant has specific information about where and when he'd like to move, and why supervision is interfering with that plan (if it is).

The court **DENIES without prejudice** the defendant's motion for early termination of supervised release. Dkt. No. 991.

Dated in Milwaukee, Wisconsin this 17th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**